**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

RITA RENE FRANKLIN,             *

       Plaintiff,             *

       v.                      *        Civil Action No. 8:23-cv-02129-PX

CHRISTINE WORMUTH,        *
Secretary, Department of the Army,

                          *

       Defendant.

                       ***

## <u>MEMORANDUM OPINION</u>

Plaintiff Rita Rene Franklin, proceeding pro se, sues the United States Department of the Army (the "Army") through the Secretary of the Army, Christine Wormuth, for a Freedom of Information Act violation, 5 U.S.C. § 552 (hereafter "FOIA").  ECF No. 1.  The Army moves for summary judgment in its favor.  ECF No. 24.[1]  The issues are fully briefed, and no hearing is necessary.  *See* D. Md. Loc. R. 105.6.  For the following reasons, the motion is GRANTED in part and DENIED in part.

## I.  Background[2]

In November 2014 and March 2015, while working at the Army's Fort Belvoir installation, Franklin filed two Equal Employment Opportunity ("EEO") Complaints.  ECF No. 24-4 ¶¶ 1–2; ECF No. 27-1 at 12; ECF No. 1-4 at 6.  The Court knows little about the events

---

[1] Franklin also moved for "summary judgment," *see* ECF No. 10, but the motion is best construed as one seeking default judgment based on the Army's purported failure to timely respond to the Complaint.  *See id.*  The Court previously denied Franklin's motion for default judgment, ECF No. 20, having determined that the Army timely responded.  ECF No. 26.  Thus, the motion at ECF No. 10 is denied for the same reason.

[2] Except where otherwise noted, the facts related below are undisputed and construed most favorably to Franklin as the non-movant.  *See The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 364 n.3 (D. Md. 2011).

underlying Franklin's EEO Complaints except for a single incident during a July 2014 work

event where Franklin claims she was kicked by a coworker. *See, e.g.*, ECF No. 24-4 ¶¶ 2–3.

In June 2016, the Army provided Franklin with a Record of Inquiry ("ROI") Report

arising from her EEO Complaints and ultimately dismissed the claims as unfounded. ECF No.

24-4 ¶ 2; ECF No. 24-10 ¶ 2. Over four years later, on August 25, 2020, Franklin submitted a

FOIA request to the Army for four categories of documents related to the ROI:

1) All evidence omitted from Tabs 5 thru 7 and 10 thru 12 [of the ROI].
2) [The] Police report referenced [in the ROI and] . . . the deposit report of this report . . . . to include all close out of the report documentation, investigator and witness statements and notes.
3) Witness statements in reference [to a statement in the ROI].
4) Witness statements [from individuals] who were present at the kicking incident on July 17, 2014 referenced on the cover page of the ROI report and []investigated by Sherrell Murray and Brent Jurgersen. Please provide all statements, notes and investigative reports concerning this incident.

ECF No. 1-4 at 5–6 (hereafter Requests Nos. 1, 2, 3, and 4). According to the Army, ROI Report

Tabs 5–7 and 10–12 would have included: information on EEO and harassment trainings;

publications on EEO and harassment prior to the incident(s); documentation regarding whether

any supervisor or management official knew of the alleged harassment; and personal information

and other data about any agency officials involved in the incident(s). *See, e.g.*, ECF No. 24-9 ¶

4.

In September 2020, Chief of the Administrative Services Division, Stephen Patterson,

who is responsible for processing Fort Belvoir FOIA queries, received Franklin's FOIA request.

ECF No. 24-5 ¶¶ 1–2. Patterson determined that any responsive records would be located at Fort

Belvoir's EEO Office, so Patterson directed that Office to complete the record search. *Id.* ¶ 3;

*see also* ECF No. 24-10 ¶ 2. As for Request No. 2 related to the kicking incident, Patterson

determined that the Fort Belvoir Military Police (the "Military Police") would possess any responsive records, and thus directed Request No. 2 to the Military Police.  ECF No. 24-5 ¶ 5.

On February 11, 2021, Patterson supplied Franklin with eighteen pages responsive to Request No. 2 (hereafter the "Police Report") with the civilian and police officer names and personal identifiers redacted.  ECF No. 24-5 ¶ 5; *see* ECF No. 1-3; 5 U.S.C. §§ 552(b)(6) & (b)(7)(C), & 5 U.S.C. 552a(k)(2).  That correspondence also informed Franklin of her right to appeal the FOIA production.  ECF No. 24-5 ¶ 7; ECF No. 24-12.  Franklin did not appeal at that time.  ECF No. 24-13.

As to the remaining requests, the Army separately notified Franklin on December 12, 2022, that after searching, no other responsive documents were located.  ECF No. 24-7.  The notice also informed Franklin that she could appeal the decision.  *Id.*; *see* ECF No. 24-5 ¶ 8.  This time, Franklin did appeal.  *See* ECF No. 24-6.  While the appeal was pending, Patterson made further inquiries for records responsive to Franklin's FOIA request.  *See* ECF No. 24-5 ¶ 9; ECF No. 24-8 ¶ 1.  None were found.  *See* ECF No. 24-8 ¶ 8.

On May 11, 2023, the Army denied Franklin's appeal because the agency had conducted a reasonably exhaustive search.  ECF No. 24-5 ¶ 10; ECF No. 24-6.  Franklin next filed this FOIA action on August 7, 2023.  ECF No. 1.

While this suit was pending, Patterson again requested that relevant stakeholders search for responsive records.  ECF No. 24-5 ¶ 11; *see also* ECF No. 24-10 ¶ 2; ECF No. 24-8 ¶ 2.  Patterson also asked three pertinent heads in the Fort Belvoir chain of command to search for records: (1) an EEO Specialist at the Equal Employment Opportunity Compliance and Complaints Review Office; (2) the Chief of Army Community Services, Tammey Braddy; and (3) Franklin's former supervisor, Brent Jurgersen.  *Id.*; *see, e.g.*, ECF No. 24-4 ¶ 8; ECF No. 24-

9 ¶ 8; ECF No. 24-11 ¶ 8.  The EEO Specialist searched both electronic and physical files, ECF No. 24-11 ¶ 8; Braddy searched her Office's computer shared drive, physical files, within her email, and on her Office's bulletin boards, ECF No. 24-4 ¶ 8; and Jurgersen looked within his own office files and email, ECF No. 24-9 ¶ 8.  None found responsive records.  ECF No. 24-5 ¶ 11.

On January 5, 2024, the Army moved for summary judgment, arguing that the record indisputably demonstrates that it conducted a sufficiently reasonable search to satisfy FOIA and that it properly redacted personal identifying information in the Police Report pursuant to relevant FOIA exemptions.  ECF Nos. 24 & 24-1.  For the following reasons, the Court agrees with the Army in large measure.

## II.    Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine dispute of material fact, entitling the movant to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is warranted.  *Celotex*, 477 U.S. at 322.  "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but 'must come forward with specific facts showing that there is a genuine issue for trial.'"  *Emmett*, 532 F.3d at 297 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another."  *Othentec*

4

*Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).  However, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)).

## III.   Analysis

Congress enacted FOIA to promote government transparency and "permit access to official information long shielded unnecessarily from public view."  *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011) (quoting *E.P.A v. Mink*, 410 U.S. 73, 79 (1973)); *see* 5 U.S.C. § 552. The Court reviews an agency's response to a FOIA request *de novo*.  5 U.S.C. § 552(a)(4)(B). FOIA cases rarely involve disputes about issues of fact but rather relate to "how the law is to be applied to the documents withheld."  *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 842 F. Supp. 2d 859, 866 (E.D. Va. 2012), *aff'd*, 703 F.3d 724 (4th Cir. 2013) (citations omitted).  This means that generally, FOIA claims can be resolved on summary judgment.  *Hanson v. U.S. Agency for Int'l. Dev.*, 372 F.3d 286, 290 (4th Cir. 2004).

An agency is entitled to summary judgment on the adequacy of its search if the record evidence, viewed most favorably to the plaintiff, reflects a "good faith effort to conduct a search . . . using methods which can be reasonably expected to produce the information requested." *Manivannan v. Dep't of Energy, Nat'l Energy Tech. Lab'y*, 843 F. App'x 481, 483 (4th Cir. 2021) (quoting *DiBacco v. Dep't of the Army*, 926 F.3d 827, 832 (D.C. Cir. 2019)).  When searching for responsive documents, agencies do not need "to look beyond the 'four corners' of the FOIA request," *Moore v. United States*, No. WDQ-13-2353, 2014 WL 2575765, at *3 (D. Md. June 6, 2014) (quoting *Rein v. Pat. & Trademark Office*, 553 F.3d 353, 365 (4th Cir. 2009)),

5

nor do they need to "unveil every potentially responsive or relevant document." *Nicholas v. Nat'l Sec. Agency*, No. WDQ-05-2800, 2006 WL 4071922, at *1 (D. Md. May 11, 2006) (quoting *Ethyl Corp. v. E.P.A.*, 25 F.3d 1241, 1246 (4th Cir. 1994) (citation omitted)).  Rather, the agency must demonstrate that it conducted a search according to the specific case that was "reasonably calculated to uncover all relevant documents."  *Ethyl Corp.*, 25 F.3d at 1246; *see also Nicholas*, 2006 WL 4071922, at *1.

To meet its burden, the agency must present detailed, nonconclusory, and good faith affidavits to allow the other party "an opportunity to challenge the adequacy of the search." *Ethyl Corp.*, 25 F.3d at 1246; *see also Taitz v. Colvin*, No. ELH-13-1878, 2013 WL 6623196, at *2 (D. Md. Dec. 13, 2013).  These affidavits cannot simply state that the "search was conducted in a manner consistent with customary practice and established procedure," but must include such information as the "search terms" and "type of search performed," and "assert that all files likely to contain responsive materials (if such records exist) were searched."  *Ethyl Corp.*, 25 F.3d at 1246 (quoting *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also Empower Oversight Whistleblowers & Rsch. v. S.E.C.*, 680 F. Supp. 3d 616, 628 (E.D. Va. 2023) (denying agency's summary judgment motion where agency's affidavit did not provide sufficient detail about searches regarding some of plaintiff's FOIA requests); *Wickwire Gavin, P.C. v. Def. Intel. Agency*, 330 F. Supp. 2d 592, 598 (E.D. Va. 2004) (finding agency's affidavit failed to establish it conducted a reasonable search where it did not detail who conducted the search, which systems were searched, the search terms used, or the length of the searches).  If the agency successfully demonstrates that its search was reasonable, the burden shifts to the plaintiff to "contradict[] the defendant's account of the search" or to "rais[e] evidence of the defendant's bad faith."  *Clay v. U.S. Dep't of Just.*, 680 F. Supp. 2d 239, 245 (D.D.C. 2010) (internal markings

omitted) (quoting *Moore v. Aspin*, 916 F. Supp. 32, 35–36 (D.D.C. 1996)).

As to Franklin's Requests Nos. 1, 3 and 4, the record demonstrates the adequacy of the Army's search for pertinent records. *See, e.g.*, ECF Nos. 24-4, 24-5, 24-8, 24-9, 24-10, 24-11. Patterson directed the search efforts, *see* ECF No. 24-5, and other personnel knew Franklin personally and were familiar with the ROI, *see, e.g.*, ECF No. 24-4 (Tammey Braddy Decl.), ECF No. 24-9 (Brent Jurgersen Decl.) or worked for Fort Belvoir departments that were believed to have responsive records, *see, e.g.*, ECF No. 24-8 (Director of Family, Morale, Welfare, and Recreation Decl.), ECF No. 24-10 (EEO Officer Decl.), ECF No. 24-11 (EEO Specialist Decl.). All affiants described in detail where they searched for records and asserted that they used reasonable search terms designed to produce a comprehensive response when searching electronic records. *See, e.g.*, ECF No. 24-4 ¶ 8 (used search terms: "Franklin," "harassment," "Jurgersen," "Murray," "EEO," "equal opportunity," "kick," "investigation"); ECF No. 24-8 ¶ 8 (same); *see also* ECF No. 24-9 ¶ 8; ECF No. 24-10 ¶ 8; ECF No. 24-11 ¶ 8. And each attested that no records could be found. *See id.* Accordingly, the Army has established it conducted a reasonable search for records responsive to Requests Nos. 1, 3 and 4. *See Ethyl Corp.*, 25 F.3d at 1246.

Franklin, by contrast, has produced no evidence that the searches were insufficient or conducted in bad faith. *See* ECF No. 27 at 5–9. Franklin baldly contends that the affiants' search terms were lacking, but she makes no real showing of any kind. *See id.* at 5; *Clay*, 680 F. Supp. 2d at 245.

Franklin also questions the reliability of certain affiants. ECF No. 27 at 3, 8–9. She faults Braddy for lacking personal knowledge about events related to Franklin's EEO Complaints. *See id.*; ECF No. 27-1 at 4–5. But in FOIA suits, an affiant need not know anything

about the content in the requested documents.  Rather, the affiant must have "personal knowledge of the procedures used in handling the request and familiarity with the documents at issue." *Am. Mgmt. Servs.*, 842 F. Supp. at 866 (citing *Spannaus v. U.S. Dep't of Just.*, 813 F.2d 1285, 1289 (4th Cir. 1987); *Schoenman v. F.B.I.*, 575 F. Supp. 2d 166, 171–72 (D.D.C. 2008)). Personal knowledge of the events memorialized in such documents is simply not required.  *Cf. id.* (citing *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993); *Wickwire Gavin*, 330 F. Supp. 2d at 598).  For purposes of FOIA, Braddy demonstrated sufficient personal knowledge concerning the records search process.

Franklin also presses that another affiant, Jurgersen is biased because he "swore" at her some nine years ago.  ECF No. 27 at 9.  Franklin's singular unpleasant exchange of words with Jurgersen, however, does not undermine Jurgersen's demonstrably sufficient search for records. *See id.*; *Clay*, 680 F. Supp. 2d at 245.  Nor does the absence of an affidavit from her other supervisor, Sherell Murray, undermine the sufficiency of the Army's search.  *See* ECF No. 27 at 9.  Murray may have "assisted" in the "investigation" pertaining to the kicking incident, but this does not require the Army to include her in the search for documents.  *See id.*; *Ethyl Corp.*, 25 F.3d at 1246.

Last, Franklin seems to suggest that the significant delay between the kicking incident and the production of the Police Report reflects "bad faith" on the Army's part.  ECF No. 27 at 9. The Court struggles to understand this contention.  Franklin did not make her FOIA request until nearly six years after the events underlying her EEO Complaints, and so much of the delay is of her own making.  *See* ECF No. 1-4 at 5–9.  And nothing else in the record gives rise to any suggestion of bad faith.  Because the record amply reflects that the Army conducted a reasonable

search for records responsive to Requests Nos. 1, 3, and 4, summary judgment as to those requests is granted in the Army's favor.

Request No. 2, however, compels a different result.  The record as to the search process is remarkably thin.  Patterson, as the singular affiant on this request, does not specify who conducted the search or what parameters were used.  *See* ECF No. 24-5 ¶ 5.  Nor does Patterson state whether searches included paper files or electronic records; or what search terms were employed.  *See id.*; *Ethyl Corp.*, 25 F.3d at 1246.  And no other affidavits fill in the factual gaps so the Court cannot evaluate the adequacy of the Army's search.  Summary judgment as to Request No. 2 is therefore denied.

That said, the Army indeed asserts that it performed a reasonable and adequate search responsive to Request No. 2.  *See* ECF No. 24-1 at 11–14.  This assertion also appears to be borne out by the eighteen-page Police Report production to Franklin.  *See* ECF No. 1-3.  Accordingly, pursuant to Federal Rule of Civil Procedure 56(e), the Court will deny summary judgment without prejudice and give the Army an opportunity to renew its motion as to Request No. 2 with sufficient record evidence, if possible.  *See Welsh v. U.S. Dep't of Just.*, No. 19-2121, 2021 WL 9909237, at *5 (D.D.C. Mar. 3, 2021) (giving party "an opportunity to properly support or address [a] fact" is "typical in FOIA litigation" (quoting Fed. R. Civ. P. 56(e)(1))); *see also Smith v. Perry*, No. 1:16CV396, 2018 WL 4559060, at *1 (M.D.N.C. Sept. 21, 2018) (collecting cases).

Lastly as to Request No. 2, Franklin argues that the Army violated FOIA in redacting names and personal identifying information from the Police Report.  *See* ECF No. 27 at 10.  Franklin's contention is without merit because such redactions were necessary to protect the

identities of law enforcement and civilian witnesses.  *See* ECF No. 24-5 ¶ 8; ECF No. 1-3; 5

U.S.C. §§ 552 (b)(6) & (b)(7)(C).

Although FOIA presumptively requires government agencies to disclose information to

the public upon request, *see* 5 U.S.C. § 552(a)(3), nine specific exemptions permit withholding

specific categories of information.  *Ethyl Corp.*, 25 F.3d at 1245 (citing *City of Virginia Beach v.

U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993)).  "These exemptions are

explicitly made exclusive [] and must be narrowly construed."  *Milner*, 562 U.S. at 565 (internal

quotations and citations omitted).  Thus, where an agency redacts information in response to a

FOIA request, it must demonstrate that it properly invoked the FOIA exemptions.  *See* 5 U.S.C.

§ 552(a)(4)(B); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 174 (1991).  It can do so by submitting

affidavits that "fairly describe[] the content of the material withheld and adequately state[] [the]

ground for nondisclosure."  *Bowers v. U.S. Dep't of Just.*, 930 F.2d 350, 357 (4th Cir. 1991).

Patterson attested that he redacted individuals' names and other personal identifying

information from the Police Report pursuant to exemptions 6 and 7(C) to protect the individuals'

privacy.  *See* ECF No. 24-5 ¶ 6.  Both "FOIA exemptions 6 and 7(C) seek to protect the privacy

of individuals identified in certain records."  *Am. Civil Liberties Union, v. U.S. Dept. of Just.*,

655 F.3d 1, 5 (D.D.C. 2011).  Specifically, exemption 6 protects from disclosure "personnel and

medical files and similar files" which would "constitute a clearly unwarranted invasion of

personal privacy," *see* 5 U.S.C. § 552(b)(6); and exemption 7(C) protects "records or

information compiled for law enforcement purposes" when disclosure "could reasonably be

expected to constitute an unwarranted invasion of privacy," *id.* § (b)(7)(C); *see Casa de

Maryland, Inc. v. U.S. Dep't of Homeland Sec.*, 409 F. App'x 697, 700 (4th Cir. 2011).

In deciding whether exemptions 6 and 7(C) are properly applied, the court must balance the privacy interest of the individuals identified in the records against the public interest in the release of the information. *See U.S. Dep't of Just. v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 762, 769 (1989); *see also Casa de Maryland*, 409 F. App'x at 700 (exemptions 6 and 7(C) differ in the "magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions." (quoting *Lahr v. National Transp. Safety Bd.*, 569 F.3d 964, 974 (9th Cir. 2009)). Once an agency identifies a "legitimate privacy interest . . . , the burden shifts to the requester to (1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest." *Casa de Maryland*, 409 F. App'x at 700 (internal quotations omitted) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).

Redaction of names and personal identifying information protect the substantial privacy interests of those involved in particular investigations. *See Ray*, 502 U.S. at 175–76; *Neely v. F.B.I*, 208 F.3d 461, 464–65 (4th Cir. 2000) (collecting cases)); *see also Reed v. N.L.R.B.*, 927 F.2d 1249, 1251 (D.C. Cir. 1991). By contrast, no public interest exists in disclosing the same unless disclosure would reveal "something directly about the working of the *Government*" or the "agency's own conduct." *Reed*, 927 F.2d at 1251 (emphasis in original) (citing *Reporters Comm. For Freedom of Press*, 489 U.S. at 773; *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)); *see also Reporters Comm. For Freedom of Press*, 489 U.S. at 773 ("in the typical case in which one private citizen is seeking information about another—the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records.").

Here, the Army has demonstrated that its redactions had been narrowly circumscribed to include solely names and personal identifiers of civilians and law enforcement officers. *See Neely*, 208 F.3d at 464–65. Franklin, however, gives no countervailing reasons why disclosure would be in the public interest. *See Casa de Maryland*, 409 F. App'x at 700; *Reed*, 927 F.2d at 1251. Accordingly, the Court concludes that the redactions satisfy FOIA as a matter of law.[3]

## IV.  Conclusion

For the foregoing reasons, the motion for summary judgment is granted in part and denied in part. A separate Order follows.

July 11, 2024                                        /s/
Date                                                 Paula Xinis
                                                     United States District Judge

---

[3]  The Army also argues that summary judgment must be granted in its favor because Franklin failed to exhaust administrative remedies as to the redactions. ECF No. 24-1 at 14–15. Although the Army correctly argues that exhaustion is a necessary precondition to filing suit, *see Coleman v. Drug Enf't Admin.*, 714 F.3d 816, 820 (4th Cir. 2013), its piecemeal treatment of Franklin's FOIA request has sowed confusion as to whether Franklin in fact exhausted her remedies on this claim. Franklin received two separate "decisions" related to her single FOIA request. *See* ECF Nos. 24-7 & 24-12. In the first, the Army produced to Franklin the redacted Police Report and advised her about her right to appeal to the agency. *See* ECF 24-12. The second decision, sent to Franklin several months later, referenced the *entire* FOIA request, including Request No. 2 to which the Police Report pertains. *See* ECF No. 24-7. The second decision, fairly read, states that the Army conducted an adequate search and found *no* responsive records whatsoever as to any of Franklin's requests. *See id.* The second correspondence also informed Franklin of her right to appeal which she *did* timely exercise. *See* ECF Nos. 24-6 & 24-7. And as to the second decision, the Army does not—indeed cannot—contend that Franklin failed to exhaust administrative remedies. So, if the Court considers the first decision for exhaustion purposes, Franklin arguably failed to exhaust. *See* ECF Nos. 24-12 & 24-13; *see also* 5 U.S.C. § 552(a)(6)(C)(i). But if it considers the second decision, it appears exhaustion is satisfied. *See* ECF Nos. 24-6 & 24-7. Rather than attempt to untie this gordian knot, the Court accords Franklin the benefit of the doubt as to exhaustion and reaches the merits of the claim.